**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARILYN MARGULIS and | ) | |
| MAX MARGULIS, individually and on | ) | |
| behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff(s), | ) | Case No. 4:19-cv-00226-SRC |
| | ) | |
| vs. | ) | |
| | ) | |
| HOMEADVISOR, INC., and JOHN | ) | |
| DOES 1-10, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

The Margulis family business is filing TCPA lawsuits, which is all fine so long as the positions they take in those cases have merit.  Here, attorney Max Margulis argues that he shouldn't have to arbitrate his hoped-for class action with HomeAdvisor based on what boils down to some misquoted dicta from a case in another circuit, and the tenuous contention that this Court should first disregard the choice-of-law provision of a contract he entered into, and then disregard an on-point decision from the jurisdiction whose law he claims controls.   On the basis of attorney Margulis's affidavit that he "[did] not recall" establishing an online account with HomeAdvisor, the Court ordered discovery on the issue of arbitration; that discovery shows that he unquestionably established an account.  The Court now considers, and grants, HomeAdvisor's second Motion to Compel Arbitration [54].

I.      **FACTS AND BACKGROUND**

On behalf of his wife, Marilyn, attorney Margulis submitted a service request on the website of Defendant HomeAdvisor, Inc.  In doing so, he gave HomeAdvisor his phone number and agreed to the Terms and Conditions of the website.  The Terms and Conditions included an

1

agreement to arbitrate and a class action waiver.  Plaintiffs allege they later received unsolicited telemarketing phone calls because they gave HomeAdvisor their phone number, and bring claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA) and Missouri's No-Call Law, Mo. Rev. Stat. § 407.1098.

The following facts are uncontroverted for purposes of HomeAdvisor's Motion:

**A.      The Parties and the service request**

Plaintiff Max Margulis is the spouse of Plaintiff Marilyn Margulis and has represented her as her attorney.  Doc. 58 at ¶ 1, 31.  The Court takes judicial notice of the fact that Plaintiffs are frequent litigants under the TCPA.  *See, e.g., Vertex Chemical Corp. v. HMA South County, L.L.C.*, No. 02CC-002866, 2010 WL 7124926 (Mo. Cir. Nov. 09, 2010) ("Mr. Margulis has testified that for the last seven (7) years his practice has been exclusively handling TCPA actions … Max Margulis or his wife Marilyn Margulis have been plaintiffs in approximately 208 individual suits filed under the TCPA … [Between] 1996 through June 29, 2004, Mr. Margulis has filed a total of 1,215 lawsuits under the TCPA").

Sometime in 2017, Plaintiffs began converting their home's screened-in porch into an enclosed sunroom.  *Id.* at ¶ 7.  As part of this project, Plaintiffs planned to install baseboards under the sunroom to add extra insulation and improve its appearance.  *Id.* at ¶ 8.  At her deposition, Marilyn[1] testified that the sunroom project "wasn't for [Max] because he didn't even want to do it."  *Id.* at ¶ 29.  Conversely, Marilyn wanted the sunroom project done and considered the project an improvement to their home.  *Id.* at ¶ 29-30.  Marilyn testified that, for home improvement projects, she would not be the one to seek contractor bids because, within their family, "that's Max's job."  *Id.* at ¶ 28.

---

[1] The Court refers to Plaintiffs by their first names to differentiate between them, and not to imply familiarity.

Defendant HomeAdvisor's business includes providing free referrals through its website by matching customer requests for various types of service work with member service professionals who are part of HomeAdvisor's referral network.  *Id.* at ¶ 10.  As part of the sunroom project, in September 2017, Max requested quotes for painting service through HomeAdvisor's website.  *Id.* at ¶ 9.  Through HomeAdvisor's online service request process, Max provided HomeAdvisor with his phone number, email address, and a description of the requested service, i.e., painting of the sunroom baseboards.  *Id.* at ¶ 14.  In order to complete online submission of a service request through HomeAdvisor's website, Max navigated to the submission webpage and clicked a button labeled "View Matching Pros."  *Id.* at ¶ 15.  It is not possible to complete submission of a service request on the HomeAdvisor website without navigating to the submission page and clicking on the "View Matching Pros" button.  *Id.*

At the time Max submitted the service request to HomeAdvisor, the webpage displayed, directly underneath the "View Matching Pros" button, the following text: "By submitting this request, you are agreeing to our Terms & Conditions."  *Id.* at ¶ 16.  The phrase "Terms & Conditions" was an active hyperlink, and was set off from the other text in blue font.  *Id.*  The "Terms & Conditions" hyperlink was also, separately, present on nearly every page of the HomeAdvisor website.  *Id.* at ¶ 17.  Clicking on any of the "Terms & Conditions" hyperlinks would direct the user to a webpage containing HomeAdvisor's complete Terms and Conditions. *Id.* at ¶ 18.

**B.    HomeAdvisor's Terms and Conditions**

At the time Max submitted the service request, HomeAdvisor's Terms and Conditions included the following arbitration provision:

**17.    Arbitration and Governing Law**

The exclusive means of resolving any dispute between you and HomeAdvisor or
any claim made by you or HomeAdvisor arising out of or relating to your use of
this Website and/or HomeAdvisor's services (including any alleged breach of
these Terms and Conditions) shall be Binding Arbitration administered by the
American Arbitration Association.  The one exception to the exclusivity of
arbitration is that you have the right to bring an individual claim against
HomeAdvisor in a small-claims court of competent jurisdiction OR EXCEPT AS
EXPRESSLY PROVIDED BY APPLICABLE FEDERAL OR STATE LAW.
But whether you choose arbitration or small-claims court, you may not under any
circumstances commence or maintain against HomeAdvisor any class action,
class arbitration, or other representative action or proceeding.

**\*NOTICE OF RIGHTS\***

a.      By using the Website and/or HomeAdvisor's Services in any manner, you
agree to the above arbitration agreement.  In doing so, **YOU GIVE UP YOUR
RIGHT TO GO TO COURT** to assert or defend any claims between you and
HomeAdvisor (except for matters that may be taken to small-claims court).  **YOU
ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION
OR OTHER CLASS PROCEEDING.**  Your rights will be determined by a
**NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY**.  You are entitled to a
fair hearing before the arbitrator.  The arbitrator can grant any relief that a court
can, but you should note that arbitration proceedings are usually simpler and more
streamlined than trials and other judicial proceedings.  Decisions by the arbitrator
are enforceable in court and may be overturned by a court only for limited
reasons.  For details on the arbitration process, see our Arbitration Procedures.

*Id.*

The phrase "Arbitration Procedures" in the above paragraph was an active hyperlink, and

appeared on the webpage in blue font.  *Id.* at ¶ 19.  When clicked, the "Arbitration Procedures"

hyperlink opened a webpage containing the complete Arbitration Procedures.  *Id.*  The

Arbitration Procedures provide in relevant part:

Applicable Rules.  The arbitration will be governed by the AAA's Commercial
Arbitration Rules and its Consumer-Related Disputes Supplementary Procedures
(together, the "AAA Rules"), as modified by these Arbitration Procedures.  If
there is any inconsistency between the AAA Rules and these Arbitration
Procedures, the Arbitration Procedures will control.   However, if the arbitrator
determines that a strict application of the Arbitration Procedures would not result
in a fundamentally fair arbitration, the arbitrator may make any order necessary to
provide a fundamentally fair arbitration that is consistent with the AAA Rules.

*Id.*

AAA's Commercial Arbitration Rules include the following:

> R-7.    Jurisdiction
>
> (a)    The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

*Id.* at ¶ 20.

### C.    Conduct after the service request

In response to Max's service request, HomeAdvisor submitted the referral to three contractors.  Plaintiffs then received phone calls from the contractors who informed Plaintiffs that they received the request for a service quote from HomeAdvisor.  Plaintiffs chose not to use any of the contractors referred by HomeAdvisor because their service quotes were higher than who Plaintiffs ended up using.

Plaintiffs allege that they began to receive unsolicited telemarketing calls in 2018 because they shared their phone number with HomeAdvisor.  *See* Doc. 3.  Accordingly, Plaintiffs initiated the present lawsuit against HomeAdvisor, asserting violations of the TCPA and Missouri's No-Call Law.  *Id.*  HomeAdvisor filed its first Motion to Compel Arbitration before the Parties conducted any discovery.  Doc. 30.  The Court denied that Motion because Max's affidavit stating that he "[did] not recall" setting up an account with HomeAdvisor precluded a conclusive showing that the service request submitted in Max's name was actually submitted by him.  Doc. 52.  The Court then permitted a period of discovery pertaining solely to the issues of contract formation and whether the Parties agreed to arbitration.  *Id.*

That discovery conclusively shows that Max set up a HomeAdvisor account.  During Max's deposition, HomeAdvisor's counsel played clips of a phone call between Max and

HomeAdvisor.  Doc. 58-2 at pgs. 28-29.  Counsel then asked if the phone call refreshed Max's

recollection about making a service request on the HomeAdvisor website.  Max replied:

> Yeah, I didn't need my recollection refreshed.  I remember making a specific –
> well, the background is that I – we were looking for a quote for some painting in
> 2017.  I went on the internet and typed – in Google and typed in painting quote St.
> Louis.  And I guess I ended up on … the HomeAdvisor website.

*Id.* at 30:2-8.  Having closed the micro gap caused by Max's "I do not recall" affidavit,

HomeAdvisor brings its renewed Motion to Compel Arbitration.

## II.    STANDARD

"Arbitration agreements are governed by the Federal Arbitration Act ("FAA")." *Hoffman*

*v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001).  The FAA provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such contract or
> transaction . . . or an agreement in writing to submit to arbitration an existing
> controversy arising out of such a contract, transaction, or refusal, shall be valid,
> irrevocable, and enforceable, save upon such grounds as exist at law or in equity
> for the revocation of any contract.

9 U.S.C.A. § 2.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate
> under a written agreement for arbitration may petition any United States district
> court which, save for such agreement, would have jurisdiction under title 28, in a
> civil action or in admiralty of the subject matter of a suit arising out of the
> controversy between the parties, for an order directing that such arbitration proceed
> in the manner provided for in such agreement.

9 U.S.C. § 4.  The FAA establishes a "liberal federal policy favoring arbitration."  *AT&T*

*Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Accordingly, "courts must place

arbitration agreements on an equal footing with other contracts" and enforce them according to

their terms.  *Id.*  However, "[a] matter should not be sent to arbitration unless there is a valid

agreement to arbitrate and the underlying dispute falls within the scope of that agreement."

*Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting

*Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)).  "While 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[,] … a party who has not agreed to arbitrate a dispute cannot be forced to do so.'"  *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)).

The Eighth Circuit has instructed that a motion to compel arbitration should be "analyzed under a standard akin to [a motion for] summary judgment."  *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014).  Accordingly, the Court must view the evidence in the light most favorable to the non-moving party, resolving all factual disputes in their favor.  *Id.* at 743.  The Court may not compel arbitration where there remains any genuine issue of material fact as to whether a valid arbitration agreement exists.  *Id.*

## III.   DISCUSSION

### A.   Motion to Compel Arbitration

HomeAdvisor moves to compel arbitration because Plaintiffs used HomeAdvisor's website and thereby agreed to HomeAdvisor's Terms and Conditions, which include an agreement to arbitrate.  Plaintiffs dispute that they ever consented to the Terms and Conditions or otherwise agreed to arbitration.  Thus, the threshold question this Court must address is whether the Parties entered into a valid arbitration agreement.  *Neb. Mach. Co., LLC*, 762 F.3d at 741 n.2.

#### 1.   Max Margulis agreed to the Terms and Conditions.

Max admits that he used the HomeAdvisor website, that he submitted a service request by clicking the 'View Matching Pros' button, and that the website displayed the text: "By submitting this request, you are agreeing to our Terms & Conditions," with the phrase "Terms & Conditions" in blue font.  Despite these admissions, Margulis argues that he is not bound by the

7

Terms and Conditions because he never actually clicked the hyperlink to view them and because the hyperlink was not underlined.

The Parties dispute the applicable law. HomeAdvisor argues that Colorado law applies because the Terms and Conditions include a choice-of-law provision stating that Colorado law shall govern. Doc. 55 at 6-7. Plaintiffs contend that Missouri law applies. Doc. 57 at 11. The Court need not resolve this dispute because under either Missouri or Colorado law the Parties formed a valid contract and Plaintiffs are bound by the Terms and Conditions. *See Blevins v. Teletech Holdings, Inc.*, No. 19-03121-CV-S-DPR, 2019 WL 3291575, at *3 (W.D. Mo. July 22, 2019) (enforcing arbitration in TCPA case without engaging in conflict-of-laws analysis "because the Court finds that the result is the same whether Colorado or Missouri law is applied").

Under both Colorado and Missouri law, Max assented to the Terms and Conditions by clicking the button and submitting his service request, even if he never clicked the hyperlink to actually view the Terms and Conditions. *See, e.g., Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1151 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) (software users were bound by terms and conditions after clicking "I accept" button, even though terms and conditions had to be separately accessed via internet); *Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1163 (D. Colo. 2019) (finding that service quote website's use of a click-through registration process that included hyperlinks to applicable terms and conditions constituted "reasonable notice" and sufficient assent to arbitration agreement); *Major v. McCallister*, 302 S.W.3d 227, 230 (Mo. Ct. App. 2009) (user of HomeAdvisor's prior website (operated under former name ServiceMagic) was bound by terms and conditions by clicking submit button where

website displayed "By submitting you agree to the Terms of Use," with a blue hyperlink, next to the button).

In both *Vernon* and *Major*, the plaintiffs argued, as Plaintiffs do here, that they never actually assented to the terms and conditions. *Vernon*, 857 F. Supp. 2d at 1148; *Major*, 302 S.W.3d at 229. The *Vernon* and *Major* courts rejected this argument because the users had constructive notice of the terms and conditions. 857 F. Supp. 2d at 1151-52; 302 S.W.3d at 231. Here, the Court finds that Max likewise had constructive notice of the Terms and Conditions. The hyperlink to the Terms and Conditions was conspicuously displayed beneath the "View Matching Pros" button in blue font. Further, nearly every page of the HomeAdvisor website displayed a link to the Terms and Conditions. Margulis manifested assent by clicking the "View Matching Pros" button because the website advised—directly beneath that button—"By submitting this request, you are agreeing to our Terms & Conditions."

Plaintiffs argue that the "Terms & Conditions" text did not adequately convey that it was a hyperlink because, though it was in blue font, it was not also underlined. Plaintiffs' sole authority for this argument is dicta from a case outside this Circuit, *Cullinane v. Uber Technologies., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) (noting that hyperlinks are "commonly blue and underlined"). The Court finds Plaintiffs' reliance on *Cullinane* not only unpersuasive but also disingenuous. The full sentence that Plaintiffs selectively quote reads: "*While not all hyperlinks need to have the same characteristics*, they are commonly blue and underlined." *Id.* (emphasis added). The First Circuit actually determined that the characteristics of the hyperlink at issue in *Cullinane* were "not dispositive." *Id.* at 63-64. Here, because the hyperlink was conspicuously set off from the remaining text in blue font, the Court finds that the "Terms & Conditions" text adequately conveyed that it was a hyperlink. "The mere lack of an underline

does not materially change the Court's analysis, such that a different result is compelled."
*Babcock v. Neutron Holdings, Inc.*, No. 20-60372-CIV, 2020 WL 1849405, at *6 n.7 (S.D. Fla.
Apr. 13, 2020).

The facts here are virtually identical to those presented in *Major*.  *See* 302 S.W.3d at 230.
Despite arguing that Missouri law applies, Plaintiffs contend this Court need not follow *Major*
because it is "just a Missouri appellate court decision."  Doc. 57 at 14 n.6.  However, Plaintiffs
cite no Missouri case rejecting *Major* or its reasoning, nor any Missouri case supporting their
argument that the constructive notice provided here was inadequate.  Plaintiffs ignore well-
established law that state appellate court decisions are "highly persuasive" and "should not be
disregarded 'unless [this court is] convinced by other persuasive data that the highest state court
would decide ... otherwise.'"  *First Tenn. Bank Nat. Ass'n v. Pathfinder Expl., LLC*, 754 F.3d
489, 491 (8th Cir. 2014) (quoting *United Fire & Cas. Ins. Co. v. Garvey*, 328 F.3d 411, 413 (8th
Cir. 2003)).  Plaintiffs do nothing to show that the Missouri Supreme Court would rule
differently than *Major*, and fail to cite any factually-similar case that contravenes *Major*.
Accordingly, the Court finds that Max agreed to the Terms and Conditions when he submitted
the service request.

### 2.    Marilyn Margulis is bound as a third-party beneficiary.

Plaintiffs contend that, even if Max is bound by the Terms and Conditions, Marilyn is not
because she did not personally use the website.  The Court disagrees.  Marilyn is bound by the
Terms and Conditions as a third-party beneficiary of the contract.

Third parties may be bound to an arbitration agreement when they "directly benefit" from
the agreement.  *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012).  This doctrine,
known as direct-benefits estoppel, "applies when a nonsignatory knowingly exploits the

agreement containing the arbitration clause." *Id.* (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003)); *see also N.A. Rugby Union LLC v. United States of Am. Rugby Football Union*, 2019 CO 56, ¶ 26, 442 P.3d 859, 864 (recognizing under Colorado law that non-signatories may be bound to arbitrate under theories of estoppel or third-party beneficiary); *Burcham v. Expedia, Inc.*, No. 4:07CV1963 CDP, 2009 WL 586513, at *4 (E.D. Mo. Mar. 6, 2009) (collecting authorities to rule that plaintiff was bound by arbitration agreement even if he did not use the website and instead someone else used it on his behalf).

Here, Marilyn was a direct beneficiary of Max's agreement with HomeAdvisor. Plaintiffs admit that the sunroom renovation project "wasn't for" Max, and that he, in fact, "didn't even want to do it." Doc. 58 at ¶ 29. Conversely, Marilyn wanted the sunroom project done and considered the project an improvement to their home. Plaintiffs do not dispute that it was "Max's job" to obtain bids for home renovation projects. *Id.* at ¶ 28. From these uncontroverted facts, the Court finds that Max submitted the request for painting service quotes to HomeAdvisor at Marilyn's behest and on her behalf. Thus, Marilyn is a direct beneficiary of Max's agreement with HomeAdvisor, as set forth in the Terms and Conditions.

Plaintiffs contend that Marilyn is not a "beneficiary" of the agreement because Plaintiffs chose not to use any of the contractors referred by HomeAdvisor. Because all of the service quotes from the HomeAdvisor-referred contractors were higher than what they ended up using, Plaintiffs argue they received no "benefit" from the agreement with HomeAdvisor. The Court disagrees. HomeAdvisor fully performed under the contract by referring Max's service request to three painting contractors. Plaintiffs then received calls with service quotes from the referred contractors. Thus, whether or not the Margulises ultimately chose to employ any of the

11

HomeAdvisor-referred contractors, they received the entirety of the "benefit" for which they contracted, i.e., HomeAdvisor's referral of contractors and the provision of service quotes.

Further, the Court finds Plaintiffs received actual benefit from HomeAdvisor's services, notwithstanding the fact they found cheaper contractors elsewhere. As a contractor-referrer, HomeAdvisor's services are essentially informational. The quotes Plaintiffs received via HomeAdvisor's referrals gave Plaintiffs more information on which to base their choice of contractor than they would have had otherwise. And, as noted above, Marilyn was the direct beneficiary of this information because Max requested HomeAdvisor's services on Marilyn's behalf. Accordingly, Marilyn is bound by the Terms and Conditions as a third-party beneficiary. To hold otherwise would allow anyone to avoid HomeAdvisor's Terms and Conditions simply by asking a third-party to use the website on their behalf. *See Burcham*, 2009 WL 586513, at *4.

### 3. The Parties agreed to arbitrate.

Having determined that both Max and Marilyn are bound by the Terms and Conditions, the Court next considers whether the Parties thereby agreed to arbitration. The Terms and Conditions—quoted in relevant part above—include an arbitration clause providing that arbitration shall be the "exclusive means of resolving any dispute" between HomeAdvisor and Plaintiffs. Doc. 58 at ¶ 18. Plaintiffs do not dispute the validity of the arbitration provision except to repeat their already-rejected arguments that they are not bound by the Terms and Conditions. Accordingly, the Court finds that the arbitration provision in the Terms and Conditions constitutes a valid agreement to arbitrate between the Parties. *See* 9 U.S.C § 2 (a written arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

### 4. The arbitration agreement delegates arbitrability to the arbitrator.

12

Plaintiffs next argue that the arbitration agreement does not apply to the present dispute because Plaintiffs' TCPA claims are beyond the scope of the arbitration provision.  The Court does not reach this question because the arbitration agreement delegates questions of arbitrability to the mediator.  The Terms and Conditions further provide:  "By using the Website and/or HomeAdvisor's Services in any manner, you agree to the above arbitration agreement … For details on the arbitration process, see our Arbitration Procedures."  Doc. 58 at ¶ 18.  The phrase "Arbitration Procedures" in this provision was an active hyperlink, set off from the other text in blue font.  *Id.* at ¶ 19.  When clicked, the "Arbitration Procedures" link opened a webpage containing HomeAdvisor's complete Arbitration Procedures, which provide that "[t]he arbitration will be governed by the AAA's Commercial Arbitration Rules".  *Id.*  As discussed above, Plaintiffs are bound by the Terms and Conditions.  The Terms and Conditions incorporate the Arbitration Procedures by express reference.  AAA Commercial Arbitration Rule 7(a), incorporated into the Arbitration Procedures, states:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.

*Id.* at ¶ 20.  "By incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability."  *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) ; *see also Fallo v. High Tech-Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("we conclude that the arbitration provision's incorporation of the AAA Rules … constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator.").

The Arbitration Procedures' incorporation of the AAA rules requires the Court to refer all jurisdictional and arbitrability disputes to the arbitrator.  Thus, the Court does not have the power to determine whether this contract and arbitration clause can govern Plaintiffs' TCPA claims

arising from telemarketing calls many months after Plaintiffs' use of the website; the arbitrator must do so.  In *Henry Schein, Inc. v. Archer & White Sales, Inc.*, the Supreme Court recently addressed the issue of delegating the arbitrability question to an arbitrator.  139 S. Ct. 524 (2019).  The Supreme Court stated, "we have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Id.* at 529 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce . . ."  *Id.*  Thus, when the parties contractually delegate the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court has "no power to decide the arbitrability issue."  *Id.*

Before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.  9 U.S.C. § 2.  "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530.  Here, as discussed above, a valid arbitration agreement exists between Plaintiffs and HomeAdvisor.  This agreement delegates the arbitrability issue to the arbitrator including the formation, existence, validity, or scope of the Agreement.  This includes the question of whether this agreement governs Plaintiffs' TCPA claims.  Therefore, the Court must compel arbitration.

### B.    Stay of Proceedings

"The [Federal Arbitration Act] generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it."  *Green v. Super Shuttle Intern., Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (citing 9 U.S.C. § 3) (stating the district court "shall...stay the trial of the

action until such arbitration has been had in accordance with the terms of the agreement"). In *Green*, however, the Court recognized that district courts sometimes rely upon "a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Id.* at 669-70. Here, the entire controversy may not be decided by arbitration because the arbitrator may decide that the contract and arbitration clause do not apply to the dispute. If that happens, and the Court expresses no opinion on whether it will, Plaintiffs may be prejudiced by a dismissal because the statute of limitations may run in the meantime. *Id.* at 770. Thus, the Court stays the action pending arbitration, rather than dismissing it.

Because the Court grants HomeAdvisor's Motion to Compel Arbitration, the Court denies without prejudice HomeAdvisor's alternative Motion to Enforce Class Action Waiver. If the arbitrator should decide that this dispute is not arbitrable and the stay of this matter is lifted, then HomeAdvisor may at that time file a renewed Motion to Enforce Class Action waiver.

### C.      Plaintiffs' Motion to Strike

Finally, the Court considers [63] Plaintiffs' Motion to Strike HomeAdvisor's Reply Statement of Uncontroverted Material Facts. The Court instructed HomeAdvisor to include with its renewed Motion to Compel Arbitration a Statement of Uncontroverted Material Facts, as described in Local Rule 4.01(e). Doc. 52. HomeAdvisor did so. Doc. 56. Plaintiffs filed a Response to HomeAdvisor's Statement of Facts. Doc. 58. HomeAdvisor then filed its Reply to Plaintiffs' Response. Doc. 62. Plaintiffs move to strike HomeAdvisor's Reply, arguing that it was improper without leave of Court. Doc. 64. HomeAdvisor responds that the Reply was appropriate given Plaintiffs' "largely argumentative responses" to HomeAdvisor's Statement of

Facts, and argues that a motion to strike may only be directed to pleadings.  Doc. 65.

Alternatively, HomeAdvisor requests leave of Court to file the Reply.  *Id.*

      The Court grants HomeAdvisor's alternative request for leave to file the Reply.

Accordingly, the Court denies Plaintiffs' motion to strike, as moot.

      Accordingly,

      **IT IS HEREBY ORDERED** that [54] Defendant HomeAdvisor, Inc.'s Motion to

Compel Individual Arbitration is **GRANTED**.  This matter is stayed pending arbitration.  The

Parties are directed to jointly file a status report within 14 days of final entry of an arbitration

award or other termination of the arbitration proceedings.

      **IT IS FURTHER ORDERED** that [63] Plaintiffs' Motion to Strike is **DENIED**, as

moot.

      So Ordered this 12th day of August, 2020.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**